UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas
FILED

JUL 19 2021

Nathan Ochsner, Clerk

UNITED STATES OF AMERICA, )
)
    Plaintiff, )
)
vs. )   CASE No. 7:18CR00008-001
)
URBISIO MUNGUIA, )
)
    Defendant, )

### DEFENDANT, URBISIO MUNGUIA
### EMERGENCY MOTION FOR COMPASSIONATE RELEASE AND REDUCTION OF SENTENCE TO TIME-SERVED WITH HOME-CONFINEMENT IMPOSED AS A SPECIAL CONDITION OF SUPERVISED RELEASE BASED ON RISK OF COVID-19 AND FOR IMMEDIATE TRANSFER TO THE CUSTODY OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT FOR PROCEEDINGS PURSUANT TO THE IMMIGRATION AND NATIONALITY ACT

COMES NOW the Defendant, URBISIO MUNGUIA, Pro-Se, and presents herewith, his Emergency Motion Compassionate Release and for Reduction of sentence to Time-Served with Home-Confinement imposed as a special condition of Supervised Release based on the Risk of COVID-19 and for Immediate Transfer to U.S. Immigration and Customs Enforcement for Proceeding pursuant to the Immigration and Nationality Act, and states as follows:

### PROCEDURAL BACKGROUND

1. On October 18, 2018, this Honorable Court sentenced the Defendant to imprisonment for a term of 80 months, in violation Offense Code...: 391 21:846 Sec 841-851 Attempt, Off/Chg: 21 U.S.C. 846, 841(A)(1) & 841(B)(1)(A) Conspiracy to Possess, with Intent to Distribute, 5 Kilograms or More of Cocaine.

2. Mr. Munguia is currently incarcerated at CI Giles W. Dalby.[1] His projected release date is August 18, 2023.[2] when the Defendant would be 49 years of age. Presently, the Defendant is 47 years of age.

3. Section 3582 allows the Court to consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.A. § 3582(c)(1)(A).

4. On May 26, 2021 the Defendant submitted his request to the Warden of CI Giles W. Dalby, therein requesting home-confinement and compassionate release due to COVID-19 concerns.

On June 29, 2021 the Warden denied the Defendant's request. However, the Warden acknowledged in his denial that the Defendant has been diagnosed with or suffers from various medical conditions that could possibly cause the Defendant to be more susceptible to contracting the coronavirus. The Warden's denial was essentially based on the Defendant's immigration detainer and his non-United States citizen/naonal status (the Defendant is Mexican). (The Defendant's request and the Warden's denial is attached hereto.[3]

5. Mr. Munguia has fully exhausted his administrative remedies as required by Title 18 U.S.C. § 3582 in that more than thirty (30) days have passed since he submitted his request to the Warden.

6. The Defendant is respectfully requesting that this Honorable Court issues its order reducing his sentence to time-served with a period of home-confinement imposed as a special condition of supervised release and that he be transferred to U.S. Immigration and Customs Enforcement for proceedings pursuant to the Immigartion and Nationality Act.

In the event this Court grants the Defendant's request after immigration completes their process Urbisio Munguia will be residing at 1341 Loretta Lynn Dr. Edinburg, Texas 78541, with his wife and kids.

---

[1] https://www.bop.gov/inmateloc/ (last visited 8/6/2020).

[2] Id.

[3] Composite Exhibit "A".

Mr. Munguia's conduct since entering federal custody has shown rehabilitation: he has participated in educational and rehabilitative courses. He has a clear disciplinary record, entitling him to good time credit.

The novel coronavirus that cause COVID-19 has triggered a pandemic. The virus is highly transmissible, extraordinarily dangerous, and posese a severe threat of death to individuals with underlying illnesses. Mr. Munguia's comorbidities, including diabetes, obesity, hypertension, and hyperlipidemia, combined with the COVID-19 pandemic constitute "extraordinary and compelling reasons" to grant his motion for compassionate release. Since sentencing, the only change has been that Mr. Munguia is now incarcerated in incredibly difficult and potentially life threatening conditions that could not have anticipated. Mr. Munguia has completed educational classes and worked to show his rehabilitation.

I. Mr. Munguia's health conditions combined with COVID-19 meet the standard for "extraordinary and compelling circumstances."

The Centers for Disease Control has stated that "[p]eople of any age" with specific medical conditions "are at increased risk of severe illness from COVID-19.[4] Among these are Type 2 diabetes mellitus and Obesity (body mass index [BMI] of 30 or higher).[5] Among the conditions that CDC has classified as potentially elevating risk is hypertension.[6] Mr. Munguia has both Type 2 diabetes and obesity as well as hypertension. In addition, Mr. Munguia's medical conditions include hyperlipidemia.[7]

Obesity. Patients with obesity are now considered among the most high risk for developing severe illness as a result of COVID-19.[8] As explained by John Hopkins cardiologist David Kass, there are several potential ways that obesity can

---

[4] Groups at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (last visited August 14, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautins/groups-at-higher-risk.html.

[5] Id.

[6] Id.

[7] Composite Exhibit "B".

[8] In one study of adult patients hospitalized as a result of COVID-19, 89.3% had one or more underlying conditions; the most common were hypertension (49.7%) and obesity (48.3%). See Garg S, Kim L, Whitaker M, et al., Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019-COVID-NET, 14 States, March 1-30, 2020. MMWR Morb. Mortal Wkly Rep 2020; 69:458-464.DOI:https://dx.doi.org/10.15585/mmwr.mm6915e3externalicon.

increase the risk, including creating difficulty breathing simply by virtue of the weight distribution on the diaphragm because one effect of COVID-19 is that "the membranes separating the lung airway sacs and blood vessels surrounding them become leaky, allowing fluid to enter the airways" meaning that the diaphragm is stressed more easily.[9] Obesity also increases the baseline inflamation in the body, so that in patients who contract COVID-19, the immune system can be "hyperactivated" causing the body's defense mechanism to become a danger itself.[10]

Finally, fat cells are especially vulnerable to respitory viruses which "can attack fat, last in fat, and shed more slowly from fat."[11] In addition to posing an especially high danger to Mr. Munguia, this also means he could be more infectious to others than the average patient.[12]

**Hypertension.** Patients with hypertension have a two-fold increase in the relative risk of mortality as compared with patiens without hypertension.[13] Pre-admission treatment for hypertension does not reduce the two-fold risk.[14] Although no one knows risk of mortality is so high, some scientists posit that hypertension itself is not the underlying cause of severe outcomes for persons with COVID-19.[15] Instead, "the organs affected by [COVID-19] already have compromised blood supplies due to long-standing high blood pressure, which makes them more vulnerable to serious damage."[16]

---

[9] Katie Pearce, Obesity a major risk factor for COVID-19 hospitalization, John Hopkins University HUB (June i, 2020) httpas://hub.jhu.edu/2020/06/01/david-kass-obesity-covid-19/.

[10] Id.

[11] Id.

[12] Id.

[13] Chau Gao, et al., Association of hypertension and antihypertensive treatment with COVID-19 mortality: a retrospective observational study, Eur. Heart J. Volume 41, Issue 22, 7 June 2020, Pages 2058-2066. https://doi.org/10.1093/eurheartj/ehaa433 (noting that pre-admission patients with a history of hypertension but without hyper-intensive treatment were associated with a higher risk of mortality only as compared with patients who had pre-admission anti-hyper-intensive treatments).

[14] Id.

[15] Marlene Cimons, High blood pressure drugs apparently don't add to covid-19 danger as earlier feared, Washington Post (June 13, 2013), https://www.washingtonpost.com/health/high-blood-pressure-drugs-apparently-dont-add-to-covid-19-danger-as-earlier-feared/2020/06/12/22432df6-a9a9-11ea-94d2-d7bc43b26bf9_story.html.

[16] Id.

Type 2 Diabetes. Mr. Munguia takes 2000 mg of metformin HCL per day to manage his blood sugar. This is close to the maximum possible dose of metformin for controlling diabetes.[17] The CDC has recognized that diabetics are at high risk of complications from coronavirus.[18] Similarly, the American Diabetes Association has stated that "people with diabetes are more likely to experience severe symptoms and complications when infected with a virus" and, in particular, has emphasized that "[h]aving disease or other complications in addiction to diabetes could worsen the chance of getting seriously ill from COVID-19, like other viral infections, because your body's ability to fight off an infection is compromised." [19]

Hyperlipidemia. (high cholesterol) ha proven to be one of the most common comorbidities in COVID-19 relate fatalities. See United States v. Hurst, 2020 U.S. Dist. LEXIS 239435. 2020 WL 7490232, at *3 (W.D. Pa. Dec. 21, 2020). Mr. Munguia is receiving prescription medication for hyperlipidemia. See Gov't Opp. at 4; BOP Medical Record.[20] hypercholestorodemia autoimmune resulting eventual destructive anti bodies.

II. Mr. Munguia has met the requirements for exhaustion.

Mr. Munguia submitted his request for compassionate release to the warden on June 08, 2021. His request for compassionate release was denied. Mr. Munguia has exhausted his administrative remedies and his motion is ripe for this Court's review, although it remains opposed to his motion for compassionate release.

---

[17] Metformin dose, Drugs.com, https://www.drugs.com/dosage/metformin.html (showing maximum dose is 2550).

[18] Groups at Higher Risk for Severe Illnes, Centers for Disease Control and Prevention (last visited August 14, 0220) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

[19] American Diabetes Association, How COVID-19 Impacts People with Diabetes, https://www.diabetes.org/coronavirus-covid-19/how-goronavirus-impacts-people-with-diabetes.

[20] Composite Exhibit "B".

III. Mr. Munguia's has a release plan in place to ensure

Mr. Munguia has a release plan that will ensure his success. He will live with his wife Ms. Mariela Isais at her home 1341 Loretta Lynn Dr., in Texas. she have space for him and
will also provide him with life necessities while he gets back on his feet. His
has a car that will allow him to get to and from work. Mr. Munguia is close with his family, and they stayed in touch during his incarceration.

## ARGUMENT

I. Introduction

This Court can and should act quickly to release Mr. Munguia His medical conditions put him at high risk for death or serious complications from COVID-19, his sentence is for a nonviolent offense, and his family Mexico are willing and able to welcome him into their stable and supportive home while are prepared to help pay for his medical expenses. He will pose no danger to the public- indeed, permitting him to self-quarantine and socially distance in his wife's home is the safest option not just for him, but for the other inmates and correctional officers at CI Giles W. Dalby, as well as the surrounding community.

II. The Law Authorize This Court to Modify Mr. Munguia's Sentence to Time Served and Release Him Immediately.

Mr. Munguia is eligible for compassionate release under the expanded "extraordinary and compelling reasons" factor provided in the First Step Act.

See 18 U.S.C. §3582(c)(1)(A); 28 C.F.R. § 571.61. In 2018, the First Step Act modified the compassionate release statute to end the BOP's gatekeeping funtion and to allow inmates to directly file compassionate release motions with the Court in certain circumstances. See 18 U.S.C. § 3582(c)(1)(A)(i). Under the First Step Act, the Court may grant an inmate's motion for a sentencing reduction if three requirements have been satisfied. First, the Court must determine that "extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent

- 6 -

with applicable policy statements issued by the Sentencing Commission." Id. Second, the Court should assess whether a reduction is consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a). Id. Third, the Court must determine either that (a) the defendant exhausted available administrative remedies "to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or that (b) 30 days have elapsed since the receip of such a request by the warden of the defendant's facility. Id.

Here, Mr. Munguia satisfies all three requirements. First, there are "extraordinary and compelling reasons" to reduce Mr. Munguia's sentence to time served. As a 47-year-old with hypertension, diabetes, obesity, and hyperlipidemia, continued incarceration would place Mr. Munguia at an unaceptable risk of death or serious injury. Keeping him incarcerated also requires the federal goverment to pay for the costs of treatment for his various medical conditions, costs which could instead be borne by Mr. Munguia and his family. Second, in light of the danger posed by this pandemic, an order reducing Mr. Munguia's sentence to time served would best achieve § 3553(a)'s directive to impose a sentence that is "sufficient but not greater than necessary." Third, Mr. Munguia has made a request to the warden for compassionate release and has been denied.

A. There are "extraordinary and compelling" reasons to grant compassionate release.

1. Mr. Munguia is eligible for compassionate release because his heightened vulnerability to COVID-19 is an extraordinary and compelling circumstance that weighs in favor of immediate release.

Mr. Munguia's medical conditions combine eith the COVID-19 pandemic meet the definition of "extraordinary and compelling circumstances."

2. COVID-19's rapid spread through the BOP system and the sub-standard care at private prisons creates an unprecedented public health crisis.

"Prisoners are particularly vulnerable to infection due to the nature of their incarceration." Hanson, 2020 WL 3605845, at *3. The new strain of coronavirus that causes COVID-19 is very contagious and creates special risks for prisoners, who are "particularly vulnerable to infection." See United States v. Millage, No. 3:13-CR-234-SI, 2020 WL 2857165, at *2 (D. Or. June 2, 2020). "Prisons are tinderboxes for infectious disease." United States V. Rodriguez, No. 2:03-CR-00271-AB-1,

2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020). Once the first infection at a facility occurs, the spread can quickly become exponential: "Federal correctional institutions, which had reported zero COVID-19 cases, and despite the steps the BOP has taken to contain the disease within its facilities, are now reporting numerous virus-related deaths." United States v. Burrill, 17-CR-00491-RS-1, 2020 WL 1846788, at *2 (N.D. Cal. Apr. 10, 2020).

The private contract facility where Mr. Munguia is housed has already become infected by the coronavirus. While information regarding privately contracted facilities is sparse, the BOP has reported at least eighty confirmed diagnosed COVID-19 cases and three death at the CI Giles W. Dalby.[21] Regardless of the number of confirmed cases, adequate and universal testing would be a requisite for confidence regarding an accurate infection rate at the facility and the actual risk of transmission of the virus. Millage, 2020 WL 2857165, at *5. Without sufficient testing, "the risk of spread is enormous." Id. While BOP facilities now repost imformation about the number of tests completed, privately managed prisons still remain silent on testing frequency.[22]

"Incarcerated/detained persons live, work, eat, study, and participate in activities within congregate enviroments, heightening the potential for SARS-CoV2 to spread once introduced."[23]

Crowding, inadequate ventilation, and security issues al contribute to the spread of infectious disease in jails and prisons.[24] The risk in the present case are substantial, in part because the privately contracted facility is located in Txas, where the governor has reopened the state despite spiking infection numbers.[25]

---

[21] Private Facilities, BOP, https://www.bop.gov/coronavirus/#private details (hyperlinked into the webpage as "privately managed prisons") (last visited August 14, 2020).

[22] See COVID-19, BOP, https://www.bop.gov/coronavirus/ (last visited August 14, 2020).

[23] Interim Guidance on Management of Coronavirus disease 2019 (COVID-19) in Correctional and Detention Facilities, CDC (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional detention.html.

[24] Martin Kaste, Prisons and Jails Worry About Becoming Coronavirus "Incubators', NPR (Mar. 13, 2020), https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators.

[25] See Paul Weber, 'Governors who quickly reopened backpedal as virus surges', Associated Press (June 26, 2020) https://apnews.com/deb3e8865bbca66db3eba817504c49c6.

Statewide infections have surpassed 513,575 confirmed cases and 9,289 fatalities.[26]

Further, the BOP does not appear to be reporting confirmed positive cases among staff of privately-managed facilities. For example, public health officials in North Carolina have reported that at least three staff members at the privately-managed Rivers Correctional Facility have tested positive for COVID-19.[27] But the BOP has reported inmate cases at this facility.[28]

Moreover, the BOP's reported figures depend on information shared by the contract manager BOP assigns to the prison.[29] Although the BOP has stated that it has shared protocols with its contractors, the contractor, rather than the BOP, "is responsible for the medical care and the costs associated with providing those services."[30] Thus, it is impossible to know the exact protocols in place at a privately-managed facility like Giles W. Dalby, or its ability to adequately isolate inmates who have tested positive for COVID-19. Considering that BOP facilities across the nation and other privately managed facilities have failed to contain the spread of COVID-19 within its inmate populations, the BOP is like unable to accurately monitor and control the spread of COVID-19 within CI Giles W. Dalby. See, e.g., Millage, 20 20 WL 2857165, *5 (noting lack of testing to provide a true picture on prison conditions); Rodriguez, 2020 WL 1627331, at *9 (concluding that BOP's proposed containment measures "have already proven insufficient.").

In fact, concerns about monitoring healthcare in privately managed prisons pre-date COVID. In 2016, the Office of the Inspector General in the Department of Justice found that "the BOP cannot as effectively ensure that contract prisons comply

---

[26] Texas Department of Health anf Human Services Texas Case Count COVID-19, Texas Department of Health Services, https://txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298ab01e8b9cafc8b83 (last visited August 14, 2020).

[27] See Maximine Berstein, 'Federal Bureau of Prisons not trakimg coronavirus cases in privately-run prisons that house 28,000 federal inmates', The Oregonian https://www.oregonlive.com/coronavirus/2020/05/federal-burea-of-prisons-not-tracking-coronavisus-cases-in-privately-run-prisons-that-house-28000-federal-inmates.html.

[28] See Private Facilities, BOP, https://www.bop.gov/coronavirus/#private details(hyperlinked into webpage as "privately managed prisons") (last visited August 14 2020 at 8:55 a.m.).

[29] Supra note 32.

[30] See Private Prisons COVID Data, BOP (May 11, 2020), https://www.bop.gov/coronavirus/docs/private prisons covid data.pdf.

- 9 -

with contract requirements and BOP policies in these areas and that inmates in contract prisons receive appropriate health and correctional services."[31] In terms of health services, the monitoring checklists used by BOP did "does not include observation steps to verify that inmates receive certain basic medical services."[32]

The extraordinary circumstances of the pandemic create compelling reasons for sentence reduction to enable Mr. Munguia to take reasonable precautions that are impossible to take in prison and to reduce the prison population, thereby improving safer staff-to-inmate ratios.

B. Mr. Munguia has satisfied the exhaustion requirement.

As noted above, Mr. Munguia's request for compassionate release from warden has been denied. Mr. Munguia has exhausted his administrative remedies and his motion is ripe for this Court's review, although it remains opposed to his motion for compassionate release.

C. The 3553(a) factors weigh in favor of Mr. Munguia's immediate release.

The § 3553(a) factors also weigh in favor of releasing Mr. Munguia immediately. See 18 U.S.C. § 3582(c)(1)(A) (directing the court to "consider[] the sentencing factors set forth in section 3553(a) to the extent that they are applicable."); See also U.S.S.G. § 1B1.13(2) (advisory guideline suggesting one factor weighing in favor of compassionate release is that "the defendant is not a danger

The "just punishment" factor is especially important under these highly unusual circumstances. When the Court sentenced Mr. Munguia, "surely "the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." United States v. Zukerman, 2020 WL 1659880, at *6 (S.D.N.Y. Apr. 3, 2020) (granting Zukerman's compassionate release motion and releasing him to home incarceration after he had served 34 months of a 70-month sentence) After Mr. Munguia is released he will live with his wife and have support for him.

---

[31] Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons, Office of Inspector Gen., U.S. Dep't of Justice, iii (2016).
[32] Id.

- 10 -

He has worked hard to demonstrate his rehabilitation through classes, including learning English and completing a substance abuse treatment cours. He has a loving supportive family who will ensure that he receives medical treatment, employment, and emotional support when he is in his home.

Mr. Munguia poses no realistic danger to this community. He has participated in educational opportunities and has received certificates of completion for two of his courses.[33] His offense of conviction was a noviolent crime and because of his current Immigration and Customs Enforcement (ICE) detainer, he will be removed to Mexico upon completion of his sentence and the border is closed to all non-essential travel due to COVID-19.[34]

D. Mr. Munguia's detainer does not provide a legal basis for the Court to deny compassionate release.

There is no language in the compassionate release statute which limits courts from granting compassionate release in cases involving non-citizens or those with immigration detainers. See 18 U.S.C. § 3582(c)(1)(A); 28 C.F.R. § 571.61. Courts in the Southern District of Texas have found that individuals with immigration detainers are eligible for compassionate release. See, e.g., U.S. v. Reyes-De La Rosa, 20 20 WL 3799523 (S.D. Tex. July 7, 2020); U.S. v. Reyes-Cantu, 1:18-CR-934, Doc. No. 32 (S.D. Tex. July 14, 2020). Likewise, courts around the country have released individuals with immigration detainers. See e.g., United States v. Bennett, No. 05 CR. 1192-1 (NRB), 2020 WL 2539077, at *2 (S.D.N.Y. May 18, 2020)(granting a motion under Section 3582(c)(1)(A) as to a defendant against whom an ICE detainer existed); United States v. Guzman Soto, No. 1:18-CR10086-IT, 2020 WL 2104787, at *3 (D. Mass. May 1,2020)(granting compassionate release where defendant was "subject to an immigration detainer whereby, upon release, he w[ould] be taken into custody by [ICE] for removal"); United States v. Ardila, No. 3:03-CR-264 (SRU), 2020 WL 2097736, at *2 (D. Conn. May 1, 2020)").

---

[33] Composite Exhibit "C"

[34] Fact Sheet: DHS Measures on the Border to Limit the Further Spreadof Coronavirus (June 16, 2020) https://www.dhs.gov/news/2020/06/16/fact-sheet-dhs-measures-border-limit-further-spread-coronavirus.

## CONCLUSION

As stated above, Urbisio Munguia does not have a history of committing violent offense, nor does he pose a danger to the community. Continued confinement in prison for the remaining months of his sentence is unnecessary to serve the purposes of punishment under § 3553(a)(2).

It is respectfully submitted that every day Urbisio Munguia spends in the close-quarters of prison, he is at risk of contracting the COVID-19 virus and suffering dire consequences therefrom.

A reduction to time-served with home-confinement as a special condition of supervised release will still reflect the seriousness of this offense; promote respect for the law, provide just punishment, deterrence, and community protection. In sum and substance, such a compassionate release will continue to be in accord with the sentencing pricipals set forth in Title 18 U.S.C. § 3553(a), and will be sufficient, but not greater than necessary, to comply with the sentencing goals set forth in Title 18 U.S.C. § 3553(2)(A-D).

WHEREFORE, Defendant, URBISIO MUNGUIA, respectfully prays that this Honorable Court enter its order granting the within Emergency Motion for Compassionate Release and Reduction of Sentence to Time-Served with Home-Confinement im-imposed as a special condition of Supervised Release based on the Risk of COVID-19 and for Immediate Transfer to U.S. Immigration and Customs Enforcement for Proceeding pursuant to the Immigration and Nationality Act.

Respectfully submitted,

*/s/ Urbisio Munguia*
Urbisio Munguia, Defendant
Reg. No.: 33922-479
Giles W. Dalby Correctional Facility
805 North Avenue F.
Post, Texas 79356.

CERTIFICATE OF SERVICE

I, hereby certify that on July _/S_, 2021, I deposited the foregoing instrument in the Inmate Mail System affixed with sufficient postage to effectuate delivery upon: Office of the Clerk, Bentsen Tower, 1701 West Business Highway 83, Room 1011, McAllen, Texas 78501.

Respectfully submitted,

Urbisio Munguia, Defendant
Reg. No.: 33922-479
Giles W. Dalby Correctional Facility
805 North Avenue F.
Post, Texas 79356.