United States District Court
Southern District of Texas
**ENTERED**
July 26, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CRIMINAL ACTION NO. 7:18-cr-00008-1 |
| § | |
| URBISIO MUNGUIA § | |

## **OPINION AND ORDER**

The Court now considers "Defendant, Urbisio Munguia [sic] Emergency Motion for Compassionate Release and Reduction of Sentence to Time-Served with Home-Confinement Imposed as a Special Condition of Supervised Release Based on Risk of COVID-19 and for Immediate Transfer to the Custody of U.S. Immigration and Customs Enforcement for Proceedings Pursuant to the Immigration and Nationality Act."[1] The Court will refer to Urbisio Munguia as Movant herein. Movant seeks relief under 18 U.S.C. § 3582 and requests the Court reduce "his sentence to time-served with a period of home-confinement imposed as a special condition of supervised release" and that he be transferred for deportation proceedings.[2] Under the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A)(i), "[a] court, on a motion by the BOP [Federal Bureau of Prisons] or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'"[3]

---

[1] Dkt. No. 168.
[2] *Id.* at 2, ¶ 6.
[3] *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

## I. LEGAL STANDARDS

### a. Timing and Exhaustion of Administrative Remedies

While the First Step Act authorizes a reduction in sentence—commonly referred to as compassionate release—Movant must first "fully exhaust[t] all administrative rights to appeal a failure of the Bureau of Prisons" to bring a motion for compassionate release on Movant's behalf, or 30 days must have lapsed since the warden of Movant's facility received Movant's administrative request, whichever is earlier.[4] Movant can satisfy the exhaustion requirement in one of two ways: (1) availing of the Administrative Remedy Program,[5] or (2) submitting a compassionate release request to the warden,[6] in accordance with the requirements under those respective programs and regulations.[7] "Courts have recognized these two options impose a mandatory requirement that a defendant submit a request to the warden of [the] facility before filing in court."[8] Furthermore, "[t]he statute is clear that the 30 day clock starts when the Warden

---

[4] 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see United States v. Jenkins*, No. 4:15-CR-3079, 2020 WL 2814437, at *2 (D. Neb. May 26, 2020) (Gerrard, C.J.) ("Nothing about the 30-day 'escape hatch' suggests it's contingent on action or inaction by the warden. [The purpose of the statute is] is to prevent prisoners from being effectively denied their right to go to court by administrative delay. It wouldn't make sense to conclude that a prisoner can go to court within 30 days if the delay is the warden's, but the prisoner is interminably stuck if the warden makes a timely decision but the BOP's Regional Director or General Counsel don't."); *United States v. Ezukanma*, No. 3:15-CR-0254-B-1, 2020 WL 4569067, at *4 (N.D. Tex. Aug. 7, 2020) ("[T]he Court finds that the plain language of § 3582(c)(1)(A) unambiguously supports the reading that 'lapse of 30 days' refers to the passage of thirty days from the warden's receipt of the request, irrespective of whether the warden denies the request."); *United States v. Brown*, 457 F. Supp. 3d 691, 698 (S.D. Iowa 2020) (holding that an inmate "satisfied the exhaustion requirement's text and purpose" because "[h]e gave the BOP the first chance to review his circumstances and let thirty days pass before proceeding to court"); Government's Supplemental Response to Defendant's Motion for Compassionate Release at 2, *United States v. Woodson* (S.D. Fla. June 5, 2020) (No. 1:13-cr-20180-CMA), Dkt. No. 402 ("[T]he official position of the Department of Justice as well as the Bureau of Prisons [is that] a defendant can file a motion for compassionate release in district court 30 days after requesting relief from the Warden, even if the Warden denies the relief within 30 days."). *But see United States v. Lombardo*, No. 3:15-CR-286, 2020 WL 4448062, at *5 (M.D. Pa. Aug. 3, 2020) (collecting cases disagreeing with this interpretation).
[5] *See* 28 C.F.R. §§ 542.10–.19
[6] *See* 28 C.F.R. § 571.61.
[7] *See* FED. BUREAU OF PRISONS, COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(g), document no. 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf.
[8] *United States v. Crinel*, No. CR 15-61, 2020 WL 955054, at *4 (E.D. La. Feb. 27, 2020) (quotation omitted).

receives the letter, not when the inmate sends it."[9] The exhaustion requirement is "mandatory" and that "[t]hose who seek a motion for compassionate relief under the First Step Act must first file a request with the BOP" and cannot obtain relief without doing so.[10] This exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release.[11] If Movant does not exhaust the administrative process, the Court cannot grant relief.[12]

### b. Extraordinary and Compelling Reasons to Grant Compassionate Release

"Prior to the passage of the First Step Act [of 2018], only the Director of the Bureau of Prisons (BOP) could file a motion for compassionate release, and that very rarely happened. [The First Step Act has] the intent of 'increasing the use and transparency of compassionate release.'"[13] The First Step Act authorizes a sentence reduction when "extraordinary and compelling reasons warrant such a reduction" with due consideration to sentencing factors, such as the seriousness of an inmate's offense and the need to prevent recidivism.[14] The statute itself does not define what constitutes "extraordinary and compelling reasons,"[15] but the words used

---

[9] *United States v. Miller*, No. 2:16-CR-00269-BLW, 2020 WL 2202437, at *1, 2020 U.S. Dist. LEXIS 80817, at *3 (D. Idaho May 6, 2020).
[10] *United States v. Franco*, 973 F.3d 465, 468–69 (5th Cir.), *cert. denied,* No. 20-5997, 141 S. Ct. 920 (2020) (mem.); *see United States v. Edwards*, 456 F. Supp. 3d 953, 963, 966 (M.D. Tenn. 2020) (collecting cases rejecting the proposition that the administrative exhaustion requirement can be waived); *United States v. Britton*, 473 F. Supp. 3d 14, 21–22 (D.N.H. 2020) (holding the exhaustion requirement is not subject to equitable or exigent exceptions).
[11] *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020).
[12] *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *United States v. Orellana*, No. 4:17-cr-0220, 2020 WL 1853797, at *1 (S.D. Tex. Apr. 10, 2020) (Ellison, J.) ("Because Defendant has not attempted to exhaust his administrative rights, the Court is unable to grant compassionate release.").
[13] *United States v. Gutierrez*, No. CR 05-0217 RB, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019) (footnote omitted) (quoting First Step Act, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018)); *see United States v. Redd*, 444 F. Supp. 3d 717, 725 (E.D. Va. 2020) (the First Step Act "eliminated the BOP Director's role as the *exclusive* channel through which a sentence reduction could be considered by courts").
[14] 18 U.S.C. § 3582(c)(1)(A)(i) (citing 18 U.S.C. § 3553(a)); *see United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).
[15] *Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011) (holding the statute does not "define—or place any limits on—what 'extraordinary and compelling reasons' might warrant such a reduction").

indicate the reasons must be "[b]eyond what is usual, customary, regular, or common" and involve so great a need that irreparable harm or injustice would result if the requested relief is not granted.[16] The Court must "provide specific factual reasons, including but not limited to due consideration of the § 3553(a) [sentencing] factors, for its decision" on whether to grant a reduction in sentence,[17] but the Court's opinion need not be exhaustive or extensive,[18] and necessarily involves the exercise of judgment in weighing sentencing factors.[19] Although some courts have considered their determination of whether to grant a sentencing determination bound by the United States Sentencing Commission Guidelines,[20] the Sentencing Guidelines are not binding on this Court generally[21] or with respect to compassionate release.[22] The Court's decision is unfettered by the Sentencing Guidelines or the commentary to the Sentencing Guidelines, and is instead bound only by the language of 18 U.S.C. § 3582(c)(1)(A)(i) and "the

---

[16] *See United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (Marmolejo, J.).
[17] *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (footnote omitted).
[18] *United States v. Pina*, 846 F. App'x 268, 269 (5th Cir. 2021); *United States v. McLin*, 840 F. App'x 804, 804–05 (5th Cir. 2021) (per curiam) (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)).
[19] *Cf. United States v. Coats*, No. 20-10419, 2021 WL 2372447, at *2 (5th Cir. June 9, 2021) (per curiam) (quoting *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) and citing *United States v. Nguyen*, 854 F.3d 276, 283 (5th Cir. 2017)) (holding that disagreement with the Court's evaluation of sentencing factors does not support reversal); *United States v. Crawford*, 839 F. App'x 916, 917 (5th Cir. 2021) (per curiam) ("Crawford's mere disagreement with the district court's weighing of the sentencing factors is not sufficient to demonstrate abuse of discretion.").
[20] *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *United States v. Avery*, No. 2:07-cr-20040-2, 2020 WL 3167579, at *5, 2020 U.S. Dist. LEXIS 104951, at *11 (W.D. Tenn. June 9, 2020) (collecting cases).
[21] *United States v. Gagne*, 451 F. Supp. 3d 230, 234 (D. Conn. 2020) (citing *United States v. Booker*, 543 U.S. 220 (2005)) ("The Court recognizes that 'extraordinary and compelling' circumstances may exist outside of those circumstances delineated by the U.S. Sentencing Commission, given the advisory nature of the guidelines . . . ."); *United States v. Gonzales*, No. SA-05-CR-561-XR, 2019 WL 5102742, at *3 (W.D. Tex. Oct. 10, 2019) ("Inasmuch as the Sentencing Guidelines are no longer mandatory, it seems inconsistent to hold that judges are nevertheless bound by U.S.S.G. § 1B1.13. But with regard to all sentencing decisions, a judge should consider the Guidelines.").
[22] *See United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021) (collecting cases holding that the Sentencing Commission has no applicable policy statement governing compassionate release).

sentencing factors in [18 U.S.C. §] 3553(a)."[23] The nonbinding Sentencing Guidelines may be informative criteria,[24] but the Court makes its own determination.[25]

The Coronavirus Disease 2019 (COVID-19) pandemic in and of itself and its relationship to prisons or associated fears of contracting the illness do not warrant compassionate release,[26] but of course "[i]t would be odd to deny [compassionate release] to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them."[27] Accordingly, Movant must identify individualized extraordinary and compelling reasons for compassionate release,[28] such as a combination of risk-enhancing medical conditions[29] or advanced age and associated impediments.[30] Furthermore, "[t]he law closely

---

[23] *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021); *accord United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."). *But see United States v. Willingham*, 2019 WL 6733028, at *2, 2019 U.S. Dist. LEXIS 212401 (S.D. Ga. Dec. 10, 2019).

[24] *See* U.S. SENT'G GUIDELINES MANUAL § 1B1.13 application notes (U.S. SENT'G COMM'N 2018) (including the inmate's medical condition, family circumstances, and age as relevant factors).

[25] *Shkambi*, 993 F.3d at 393; *see United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction.").

[26] *United States v. Koons*, 455 F. Supp. 3d 285, 291 (W.D. La. 2020) ("The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person. The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."); *United States v. Williams*, No. 4:16-CR-120 (2), 2020 WL 3078599, at *3 (E.D. Tex. June 9, 2020) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) ("Defendant cites no authority for the proposition that the *fear* of contracting a communicable disease warrants a sentence modification."); *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) ("[A] reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission . . . ."); *United States v. Dodge*, No. 17-323-01, 2020 U.S. Dist. LEXIS 119493, at *10–11 (W.D. La. July 6, 2020).

[27] *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

[28] *See generally United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) ("Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions."); *United States v. Blevins*, 832 F. App'x 192, 192 (4th Cir. 2020) (per curiam) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)) ("In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility.").

[29] *See, e.g.*, *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 U.S. Dist. LEXIS 59255, at *5 (S.D. Tex. Mar. 30, 2020) (Ellison, J.) (granting compassionate release to a prisoner with end stage renal disease, diabetes, arterial

guards the finality of criminal sentences against judicial change of heart"[31] and an increased individual vulnerability to illness persists whether or not an inmate is incarcerated, so Movant must show some indicia that a sentence reduction is the better course than continued imprisonment,[32] but the Court is mindful that "courts around the country have recognized that the risk of COVID-19 to people held in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected."[33]

---

hypertension, and a mobility handicap); *United States v. Foster*, No. 1:14-cr-324-02, 2020 U.S. Dist. LEXIS 82985, at *9 (M.D. Pa. Apr. 3, 2020) (granting compassionate release to a prisoner with chronic lung disease); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (granting compassionate release to a prisoner with diabetes, neuropathy, hypertension, and liver abnormalities indicating disease); *United States v. Pabon*, No. 17-165-1, 2020 U.S. Dist. LEXIS 78245, at *1 (E.D. Pa. May 4, 2020) (granting compassionate release to a 54-year-old prisoner who "suffers from diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis").

[30] *See United States v. Cantu-Rivera*, No. H-89-204, 2019 U.S. Dist. LEXIS 105271, at *3 (S.D. Tex. June 24, 2019) (Lake, J.) (granting compassionate release to a 69-year-old prisoner with "arthritic conditions in multiple joints, cataracts, diabetes, prostrate conditions" who had already served 30 years in jail and indicated successful rehabilitation); *United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM-01, 2019 U.S. Dist. LEXIS 78370, at *3 (S.D. Ind. May 9, 2019) (granting compassionate release to a 72-year-old prisoner with "Type II Diabetes, insulin-dependent, with peripheral neuropathy; hyperlipidemia; emphysema; chronic kidney disease stage III; Hepatitis C type 1A (treatment completed and no sign of disease noted); and[] chronic pain" and uncontrollable diarrhea); *United States v. Dunlap*, 458 F. Supp. 3d 368, 370 (M.D.N.C. 2020) (granting compassionate release to a 77-year-old prisoner with "hypertension, severe thyroid problems, arthritis, acute nerve pain, muscle wasting and atrophy, as well as a bladder disorder" and need for an ambulatory walker); *cf. United States v. Ebbers*, 432 F. Supp. 3d 421, 428 (S.D.N.Y. 2020) ("Because the Age of Defendant Note does not mention self-care, a substantially diminished ability to provide self-care is impliedly not required when the defendant is relying on his age as the basis for his requested relief.").

[31] *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (quotation omitted) (collecting cases).

[32] *See United States v. Clark*, 451 F. Supp. 3d 651, 656–57 (M.D. La. 2020) (collecting cases discussing the movant's failure to show that the BOP plan was inadequate in the context of movant's demonstration of extraordinary and compelling reasons for a sentence reduction). *But see United States v. Atkinson*, No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585, at *3 (D. Nev. Apr. 17, 2020) (noting "obvious shortcomings" in the BOP action plan to address COVID-19 and therefore diminishing the hurdle an inmate must clear to obtain compassionate release); *United States v. Millage*, 464 F. Supp. 3d 1218, 1223–24 (D. Or. 2020) (holding that the BOP's failure to conduct widespread COVID-19 testing, even in the absence of symptomatic inmates, did not defeat a motion for compassionate release).

[33] *United States v. Williams*, No. 3:04-cr-95/MCR, 2020 U.S. Dist. LEXIS 63824, at *4 (N.D. Fla. Apr. 1, 2020) (quotation omitted); *see United States v. Stephens*, 447 F. Supp. 3d 63, 65 (S.D.N.Y. 2020) (citing Joseph A. Bick, *Infection Control in Jails and Prisons*, 45.8 CLINICAL INFECTIOUS DISEASES 1047 (2007), https://doi.org/10.1086/521910 (finding increased vulnerability to certain infectious diseases among the incarcerated population)) ("[I]nmates may be at a heightened risk of contracting COVID-19 should an outbreak develop."); Brendan Saloner et al., *COVID-19 Cases and Deaths in Federal and State Prisons*, 324.6 J. AM. MED. ASS'N 602 (2020), https://jamanetwork.com/journals/jama/article-abstract/2768249 ("The COVID-19 case rate for prisoners was 5.5 times higher than the US population case rate of 587 per 100,000 [in June 2020]."); *United States v. Jackson*, No. 4:14-CR-00576, 2020 WL 1955402, at *4 (S.D. Tex. Apr. 23, 2020) (Ellison, J.) (citing Timothy

Even if the Court does find "extraordinary and compelling reasons" to warrant a sentence reduction, Movant will not necessarily be entitled to compassionate release. The Court will also "conside[r] the factors set forth in section 3553(a) to the extent that they are applicable."[34] For example, the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant"[35] and "the need to protect the public from further crimes."[36] "Eligibility for resentencing under the First Step Act, however, does not equate to entitlement. The district court has broad discretion in deciding whether to resentence."[37] For example, when an outsize proportion of the sentence imposed remains to be served, such as 23 months remaining on a 27-month custodial sentence, a reduction in sentence likely contravenes the § 3553(a) factors and will preclude compassionate release.[38]

Lastly, the Court does not consider whether to modify a sentence imposed to a sentence of home confinement. Section 603(a) of the First Step Act of 2018 leaves the discretion to

---

Williams et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. TIMES, Nov. 30, 2020, https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html) ("The Court is also very aware that prisons are particularly conducive to the spread of COVID-19."); *United States v. Burrill*, 445 F. Supp. 3d 22, 26 (N.D. Cal. Apr. 10, 2020) ("Federal correctional institutions, which had reported zero COVID-19 cases only weeks ago, and despite the steps the BOP has taken to contain the disease within its facilities, are now reporting numerous virus-related deaths.").

[34] 18 U.S.C. § 3582(c)(1)(A); *see United States v. Smith*, 828 F. App'x 215, 216 (5th Cir. 2020) (per curiam) (holding that the district court sufficiently articulated reasons for denying a prisoner's motion by discussing the sentencing factors).

[35] 18 U.S.C. § 3553(a)(1).

[36] *United States v. Glenewinkel*, 831 F. App'x 158, 159 (5th Cir. 2020) (per curiam).

[37] *United States v. Whitehead*, 986 F.3d 547, 550 (5th Cir. 2021) (quotations and citations omitted).

[38] *See United States v. Green*, No. 2:11-CR-00468-TLN, 2020 WL 3047840, at *3 (E.D. Cal. June 8, 2020); *United States v. Garcia*, 847 F. App'x 262 (5th Cir. 2021) ("Given the nature and circumstances of Garcia's alien transportation offense and that he had served less than half of his sentence, the district court did not abuse its discretion in determining that the § 3553(a) factors weighed against a compassionate release sentence reduction."); *United States v. Hoopes*, No. CR 16-509-02, 2020 WL 6889211, at *5 (E.D. Pa. Nov. 24, 2020) ("Mr. Hoopes has also not served the bulk of his sentence. Accounting for his credit for good conduct, he has only served approximately 16 months, or not quite 30%, of his 54-month sentence. An early release would be contrary to the § 3553(a) factors."); *United States v. Shulick*, No. CR 16-428, 2020 WL 3250584, at *5 (E.D. Pa. June 16, 2020) ("While defendant has served 19 months thus far for his crimes, there is still a substantial amount of time remaining in defendant's 60-month sentence. Releasing defendant now would cut his current sentence by well over half and would not appropriately reflect the nature and circumstances of his offenses, promote just punishment, or afford adequate deterrence to criminal conduct."); *United States v. Hasan-Hafez*, No. 16 CR. 221-2 (KPF), 2020 WL 2836782, at *5 (S.D.N.Y. June 1, 2020) ("It would undercut the § 3553(a) factors for the Court to allow Mr. Hasan-Hafez to serve just 13 months of a 45-month sentence.").

release a prisoner to home confinement exclusively with the United States Attorney General.[39] Furthermore, "[d]ecisions regarding prisoner designations, including release to home confinement, are reserved exclusively to BOP, as they involve specialized determinations uniquely within its expertise."[40]

## II. ANALYSIS

The Court first turns to the mandatory administrative exhaustion requirement. Movant included an exhibit memorandum dated June 29, 2021, signed by the warden of his facility, Correctional Institution Giles W. Dalby, in which Warden M. Friend denies Movant compassionate release because he has an Immigration and Customs Enforcement detainer.[41] Because Movant was denied release by the warden, and because more than 30 days have elapsed since Movant's May 26th request,[42] the Court holds that Movant has properly exhausted the administrative prerequisites and is entitled to be considered by this Court for compassionate release.[43]

As cause to grant compassionate release, Movant argues that he suffers from "comorbidities, including diabetes, obesity, hypertension, and hyperlipidemia" that, in light of the COVID-19 pandemic and Movant's rehabilitative efforts while incarcerated, constitute extraordinary and compelling reasons for compassionate release.[44] The Court first notes that hypertension is commonplace and does not constitute an extraordinary and compelling reason for

---

[39] *See* Pub. L. No. 115-391, § 603(a), 132 Stat. 5194, 5238 (Dec. 21, 2018); 34 U.S.C. § 60541(g); *United States v. Curry*, No. CR 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019) ("Because the First Step Act gives the *Attorney General* the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant the requested relief."); *Burg v. Nicklin*, No. EP-19-CV-24-FM, 2019 WL 369153, at *3 (W.D. Tex. Jan. 29, 2019) ("The Attorney General—and by delegation the BOP—has exclusive authority and *discretion* to designate the place of an inmate's confinement.").
[40] *United States v. Adcock*, No. CR 3:19-00106, 2020 WL 2043811, at *3 (W.D. La. Apr. 28, 2020) (citing 18 U.S.C. § 3621(b)).
[41] Dkt. No. 168-1 at 2.
[42] *Id.* at 3.
[43] *See supra* note 4.
[44] Dkt. No. 168 at 3.

compassionate release.[45] Hyperlipidemia does not appear to be a condition that increases an individual's risk of severe illness from COVID-19.[46] However, both diabetes and obesity "can make [a person] more likely to get severely ill from COVID-19."[47] Movant's diabetes severity is "[m]ild," chronic, and managed with medications such as Lisinopril and Metformin,[48] and his body mass index is 39.45,[49] which verges on severe obesity. Even Movant's warden acknowledges that he suffers from medical conditions that could possibly cause him "to be more susceptible to contracting the coronavirus."[50] However, approximately 15.9% of United States adults suffer from diabetes,[51] and "an estimated 42.5% of U.S. adults aged 20 and over have obesity, including 9.0% with severe obesity."[52] Movant's conditions are therefore unfortunately common, do not constitute terminal illnesses, and simply do not rise to the level of extraordinary and compelling.[53] Although Movant's rehabilitative efforts and educational course completions[54] are laudable, they are not relevant in the absence of independent extraordinary and compelling reasons for release.[55]

Even if the Court found Movant's medical conditions to constitute extraordinary and compelling grounds warranting compassionate release, the Court would not grant Movant's

---

[45] *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021), *cert. denied*, No. 20-7832, 2021 WL 2044647 (U.S. May 24, 2021) (mem.).
[46] *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; *supra* note 28.
[47] *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL AND PREVENTION (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[48] Dkt. No. 168-2 at 2.
[49] *Id.* at 14.
[50] Dkt. No. 168-1 at 2.
[51] *Diabetes*, CTRS. FOR DISEASE CONTROL AND PREVENTION: NAT'L CTR. FOR HEALTH STATISTICS, https://www.cdc.gov/nchs/fastats/diabetes.htm (last visited July 19, 2021).
[52] CHERYL D. FRYAR, MARGARET D. CARROLL, & JOSEPH AFFUL, PREVALENCE OF OVERWEIGHT, OBESITY, AND SEVERE OBESITY AMONG ADULTS AGED 20 AND OVER: UNITED STATES, 1960–1962 THROUGH 2017–2018, https://www.cdc.gov/nchs/data/hestat/obesity-adult-17-18/obesity-adult.htm.
[53] *See United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021), *cert. denied*, No. 20-7832, 2021 WL 2044647 (U.S. May 24, 2021) (mem.); *supra* notes 16, 29.
[54] *E.g.*, Dkt. No. 168-3 at 5.
[55] *See United States v. Rogers*, No. 1:09CR100-LG-RHW-1, 2020 WL 3423423, at *2 (S.D. Miss. June 22, 2020).

motion because of the 18 U.S.C. § 3553 sentencing factors.[56] Movant was arrested on December 12, 2017,[57] detained without bond, and sentenced in 2018 to 80 months in custody,[58] well below the Sentencing Guidelines range of 135 to 168 months, upon the government's motion given Movant's substantial assistance to the United States.[59] At the time of Movant's motion, he had served only about 43 months of his 80-month sentence. The Court does not find that granting a reprieve on approximately half of Movant's already reduced sentence would satisfy the § 3553 sentencing factors,[60] particularly the need for the sentence imposed to promote respect for the law and to reflect the seriousness of Movant's offense of possessing with intent to distribute a substantial 5 kilograms or more of cocaine.[61] For the foregoing reasons, Movant's motion for compassionate release[62] is **DENIED**.

    IT IS SO ORDERED.

    DONE at McAllen, Texas, this 26th day of July 2021.

                                      Micaela Alvarez
                                      United States District Judge

---

[56] *See supra* note 17.
[57] Dkt. No. 2.
[58] Dkt. No. 130.
[59] Dkt. No. 131.
[60] *See supra* note 38.
[61] *See* 18 U.S.C. § 3553(a)(2)(A).
[62] Dkt. No. 168.